## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD POLIDI,                 )
                                )
                Plaintiff,      )
                                )
        v.                      )        1:17cv54
                                )
WAYNE TRUAX, in each of his     )
official and individual         )
capacities,                     )
                                )
                Defendant.      )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1), in conjunction with his pro se Complaint (Docket Entry 2), as well as on Plaintiff's Request that Proceedings Be Stayed (Docket Entry 5). For the reasons that follow, the Court will deny Plaintiff's Request that Proceedings Be Stayed, and will grant Plaintiff's Application to Proceed In Forma Pauperis for the limited purpose of recommending dismissal of his federal claims under 28 U.S.C. § 1915(e)(2) as frivolous and for failing to state a claim and dismissal without prejudice of his state claims under 28 U.S.C. § 1367(c).

### LEGAL STANDARD

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because

his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256–57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

Alternatively, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[1]

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted), a standard of liberal construction does not apply "where, as here, the *pro se* plaintiff is a practicing or former attorney," <u>Polidi v. Bannon</u>, ___ F. Supp. 3d ___, ___, 2016 WL 8135476, at *1 n.1 (E.D. Va. Dec. 28, 2016) (collecting cases that "declined [to] give liberal construction" to pleadings prepared by current or former attorneys). In any event, the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions . . . ." <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation

## BACKGROUND

This action constitutes one of many lawsuits that Plaintiff has filed in federal court in connection with the 2014 surrender of his North Carolina law license. See Polidi v. Bannon, ___ F. Supp. 3d ___, ___, 2016 WL 8135476, at *2 (E.D. Va. Dec. 28, 2016) ("This case is the fifth lawsuit that [P]laintiff, a disbarred attorney, has filed in this district in connection with his disbarment by the North Carolina State Bar . . . or the United States Patent and Trademark Office . . . ."). As a neighboring district court noted in dismissing one such suit, Plaintiff filed an affidavit of surrender (the "Affidavit of Surrender") in a North Carolina state court, and that court entered a consent order of disbarment (the "Consent Order") in relation to Plaintiff's surrender of his North Carolina law license. See id.; see also Disciplinary Orders, North Carolina State Bar, https://www.ncbar.gov/handlers/DisciplinaryOr derHandler.ashx?url=\Polidi,%20Richard%20Order%20of%20Disbarment. pdf&keyword= (last visited Mar. 9, 2017) (providing copy of the Affidavit of Surrender (cited herein as (Aff. ¶ ___) or (Aff. at

---

marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)). Given that understanding, even when construed liberally, the Complaint fails under Section 1915(e)(2).

-4-

___)) and Consent Order (cited herein as (Consent Ord. at ___))).[2]

In the Affidavit of Surrender, Plaintiff affirmed the following:

> 1. I desire to resign and hereby tender my license to practice law in North Carolina.

> 2. My resignation is freely and voluntarily rendered, and is not the result of coercion or duress. I am fully aware of the implications of submitting my resignation.

> 3. I am aware that there is a pending investigation by the North Carolina State Bar [(the "Bar")] regarding allegations that I used approximately $16,000.00 of funds received in connection with the representation of a client [(the "Client")] for the benefit of myself and the [C]lient, when the [C]lient had assigned the right to those entrusted funds to a third party.

> 4. I acknowledge that <u>the material facts upon which the investigation referenced above is predicated are true</u>.

---

[2] Plaintiff does not contest the authenticity of the Affidavit of Surrender or Consent Order. (<u>See</u> Docket Entry 2.) Rather, the Complaint specifically relies on the "Consent Order which disbarred the Plaintiff" in support of the allegations that Defendant misrepresented certain facts in the North Carolina State Bar's prosecution of Plaintiff. (<u>Id.</u> ¶ 12.) Under these circumstances, the Court may consider the Consent Order and Affidavit of Surrender in its Section 1915(e)(2) review. <u>See</u> <u>Daye v. Bounds</u>, 509 F.2d 66, 68 (4th Cir. 1975) ("[A] district court may properly consider court records for the purpose of determining whether an action brought in forma pauperis must be dismissed as frivolous."); <u>see also</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) (recognizing that, when considering whether a complaint fails to state a claim on which relief may be granted, courts ordinarily examine "the complaint in its entirety, as well as other sources . . . [such as] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); <u>Witthohn v. Federal Ins. Co.</u>, 164 F. App'x 395, 396 (4th Cir. 2006) (ruling that, when determining whether a complaint fails to state a claim, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed").

-5-

5. I am submitting my resignation because I know that if disciplinary charges were predicated upon the misconduct under investigation, I could not successfully defend against them.

(Aff. ¶¶ 1-5 (emphasis added).)  The corresponding Consent Order provides, <u>inter alia</u>, that:

In September 2012, [Plaintiff] received approximately $16,000.00 in connection with the representation of [the] [C]lient. At the time he received the funds, [Plaintiff] was aware that [the] [C]lient had assigned the right to those funds to a third party. [Plaintiff] used the funds for the benefit of himself and the [C]lient without the third party's authorization. [Plaintiff] ultimately transferred to the [C]lient an amount at least equal to the entrusted funds he had received in connection with the case.

. . .

[Plaintiff]'s unauthorized use of entrusted funds for personal benefit or the benefit of third parties was in violation of Rule 1.15-2(j) and Rule 8.4(c) of the Rules of Professional Conduct.

. . . [Plaintiff]'s misconduct constitutes grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2).

[Plaintiff] has engaged in professional misconduct warranting disbarment.

. . .

[Plaintiff] is DISBARRED from the practice of law in North Carolina.

(Consent Ord. at 1-2.)  Plaintiff signed and notarized the Affidavit of Surrender (Aff. at 1), and he and his attorney signed the Consent Order (Consent Ord. at 2).

Notwithstanding Plaintiff's sworn, notarized concession that he committed professional misconduct warranting disbarment through

-6-

his misuse of entrusted funds, Plaintiff filed the instant action against Defendant, "an investigator employed by the [Bar]" (Docket Entry 2, ¶ 5), seeking damages and declaratory relief (id. at 8), for Defendant's alleged role as "the principal investigator in connection with [the allegedly] fundamentally unfair and dishonest prosecution of the [P]laintiff by the Bar" (id. ¶ 6). Specifically, the Complaint alleges that Defendant misrepresented to the Bar's Grievance Committee (the "Grievance Committee") that "[P]laintiff had deprived [the] [C]lient of funds that belonged to th[e] [C]lient and which th[e] [C]lient was entitled to receive" (id. ¶ 7 (emphasis added)), when he knew that "[P]laintiff transferred to the [C]lient funds to which the [C]lient had zero right to receive" (id. ¶ 8).[3]

---

[3] The Complaint asserts that the Grievance Committee bears responsibility for finding probable cause of misconduct and enacting discipline in North Carolina's attorney grievance process. (Docket Entry 2, ¶ 9.) According to the Bar's website, the "Grievance Committee acts much like a grand jury, considering complaints in private and deciding whether there is probable cause to refer a case to the Disciplinary Hearing Commission (DHC), an independent tribunal, for public trial and possible sanctions." Roadmap of the Disciplinary Process, North Carolina State Bar, https://www.ncbar.gov/lawyer-discipline/roadmap-of-the-disciplinary-process/ (last visited Mar. 9, 2017). "When it finds probable cause to believe that misconduct occurred warranting more discipline than a censure, the Grievance Committee can refer the grievance to the Disciplinary Hearing Commission for trial. The Grievance Committee does not have authority to impose suspension or disbarment. Cases involving misappropriation of client or fiduciary funds . . . are [among] the ones most frequently referred to the DHC for trial." Id. (citations omitted).

In other words, the Complaint alleges that Plaintiff did not misappropriate the Client's funds, as Defendant allegedly misrepresented to the Grievance Committee, but instead that Plaintiff misappropriated a third-party's funds. (See id. ¶¶ 8 ("The truth is that the [C]lient had zero right to the subject funds. [Defendant] knew that the [C]lient was never entitled to receive those funds."), 10 ("[Defendant] vouched for statements in which any mention whatsoever that there had existed assignment of right to the subject funds by the [C]lient had been omitted. [Defendant] likewise vouched for the veracity of statements that the subject funds belonged to the [C]lient, knowing those statements to be false."), 13 ("The [C]lient had zero right to the subject funds, yet retained the funds transferred thereto in their entirety and further demanded an additional sum in excess of sixteen thousand dollars from the Plaintiff. Upon information and belief, the [C]lient misrepresented to the Bar that no funds had ever been transferred to the [C]lient.").) The Complaint states that "[t]he fact that the funds did not belong to the [C]lient was critical to the decisions made by the Plaintiff, and to the application of the law to the facts in every respect." (Id. ¶ 11.)

The Complaint further alleges that Defendant presented an investigative report (the "Investigative Report") to the Grievance Committee that asserted (in addition to the foregoing alleged misrepresentation) that (1) "online withdrawals were made from the

-8-

Plaintiff's trust account when, in fact, the bank did not even provide online access" (id. ¶ 20), (2) "cash withdrawals were made when no cash withdrawals were made from the trust account" (id.), and (3) a "consent injunction" constituted "evidence of misappropriation by the [P]laintiff" when that "was never the purpose of the Consent [Injunction], nor was it ever a finding" (id. ¶ 21). According to the Complaint, as a result of these alleged misrepresentations, the Grievance Committee found probable cause of attorney misconduct and "authorize[d] the Bar prosecutor to proceed without the Grievance Committee's taking any other action." (Id.; see also id. ("Upon information and belief, the decisions of the Grievance Committee were based substantially, if not exclusively, on the contents of the [I]nvestigative [R]eport.").)

Based on these allegations, the Complaint asserts federal claims under 42 U.S.C. §§ 1983 & 1985 for the alleged deprivation of Plaintiff's federal constitutional due process rights (id. ¶¶ 23-28), as well as state-law claims for breach of fiduciary duty (id. ¶¶ 29-32), abuse of process (id. ¶¶ 33-37), conversion (id. ¶¶ 38-41), and interference with contract (id. ¶¶ 42-47). As relief, the Complaint requests damages and "a declaratory judgment finding that the violations [alleged therein] took place." (Id. at 8.)

-9-

## A. Federal Claims

The Complaint first purports to state a claim for violation of Plaintiff's constitutional due process rights under 42 U.S.C. §§ 1983 & 1985 (id. ¶¶ 23-28), seeking damages against Defendant in both his individual and official capacity (id. at 1 (case caption)). "[A] suit for damages against a state official in his official capacity is actually a suit against his office and, thus, the State." Eller v. Kaufman, No. 2:11CV31, 2012 WL 3018295, at *8 (W.D.N.C. July 24, 2012) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (internal footnote and citation omitted).

Sections 1983 and 1985 provide for suits against a "person," not a state. See 42 U.S.C. §§ 1983, 1985. Thus, "Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. §[§] 1983 [& 1985]." Coffin v. South Carolina Dep't of Soc. Servs., 562 F. Supp. 579, 585 (D.S.C. 1983) (explaining that, "just as neither [the state agency defendant] nor the Board as *alter egos* of the state is a 'person'

-10-

within the meaning of 42 U.S.C. § 1983, neither one is a 'person' within the meaning of 42 U.S.C. §§ 1985 and 1986"). Therefore, because a suit against Defendant in his official capacity constitutes a suit against the State, and the term "person" under Sections 1983 and 1985 does not encompass the State, Plaintiff's official capacity claims fail in such obvious fashion as to qualify as frivolous. See Woodward v. Chautauqua Cty., No. 15-CV-246, 2016 WL 4491712, at *2 (W.D.N.Y. July 5, 2016) (concluding that "[n]either a state agency nor a state officer acting in his official capacity is subject to suit under 42 U.S.C. § 1983[ or] § 1985" (citing Posr v. Court Officer Shield No. 207, 180 F.3d 409 (2d Cir. 1999))), recommendation adopted, 2016 WL 4475044, at *1 (W.D.N.Y. Aug. 25, 2016).

In regard to the individual capacity claims, "[t]o state a claim for relief . . . under [42 U.S.C.] § 1983, [Plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). Here, the Complaint alleges that "[Defendant] has been an investigator employed by the [Bar] at all times relevant to this matter" (Docket Entry 2, ¶ 5), that the Bar is "a State agency" (id. ¶ 26), and that Defendant deprived Plaintiff of his Constitutional due process rights while acting "under color of North Carolina law" (id.).

-11-

However, the Complaint further asserts that Defendant's investigation of Plaintiff "constituted a substantial deprivation of substantive and procedural due process and <u>caused the</u> <u>[P]laintiff to surrender his license to practice law</u>." (<u>Id.</u> ¶ 6 (emphasis added).) Notably, though, the Complaint concedes that "[P]laintiff transferred to the [C]lient funds to which the [C]lient had zero right to receive" (<u>id.</u> ¶ 8), and the Consent Order states that "[Plaintiff]'s unauthorized use of entrusted funds for personal benefit <u>or the benefit of third parties</u> was in violation of Rule 1.15-2(j) and Rule 8.4(c) of the Rules of Professional Conduct" (Consent Ord. at 1 (emphasis added)), which "constitute[d] grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2)" (<u>id.</u> at 2) and "warrant[ed] disbarment" (<u>id.</u>)[4]

---

[4] In 2014, the year that Plaintiff surrendered his law license, Rule 1.15-2(j) of the North Carolina Rules of Professional Conduct provided that "[a] lawyer shall not use or pledge any entrusted property to obtain credit or other personal benefit for the lawyer or any person other than the legal or beneficial owner of that property." N.C. R. Prof'l Conduct 1.15-2(j) (2014). In turn, Rule 8.4(c) of the North Carolina Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." N.C. R. Prof'l Conduct 8.4(c) (2017). Further, N.C. Gen. Stat. § 84-28(b) provides:

> The following acts or omissions by a member of the [Bar] or any attorney admitted for limited practice under [N.C. Gen. Stat. §] 84-4.1, individually or in concert with any other person or persons, shall constitute misconduct and shall be grounds for discipline whether the act or omission occurred in the course of an attorney-client relationship or otherwise:
> . . .

Thus, when examining the Complaint against the backdrop of the Consent Order, the Complaint concedes that Plaintiff committed the misconduct (i.e., transferring entrusted funds to the Client without authorization) for which he surrendered his law license.

Under these circumstances, assuming Defendant misrepresented certain facts regarding Plaintiff's misconduct in the Investigative Report submitted to the Grievance Committee, those misrepresentations cannot qualify as material causes of Plaintiff's surrender of his law license. Rather, Plaintiff concedes in the Complaint that he transferred funds to the Client when the Client possessed "zero" right to those funds (Docket Entry 2, ¶ 8), and the Consent Order and Affidavit of Surrender confirm that Plaintiff surrendered his law license because of that misconduct (see Aff. ¶¶ 3-4 (admitting misappropriating entrusted funds)); Consent Ord. at 1 (asserting that Plaintiff "used the funds [that he knew that the Client had assigned to a third party] for the benefit of himself and the [C]lient without the third party's authorization")). Moreover, the Affidavit of Surrender expressly conceded "that the material facts upon which the investigation [of Plaintiff was] predicated are true." (Aff. ¶ 4.)

---

(2) The violation of the Rules of Professional Conduct adopted and promulgated by the Council in effect at the time of the act[.]

N.C. Gen. Stat. § 84-28(b).

-13-

Put another way, any misrepresentations Defendant made to the Grievance Committee regarding Plaintiff's professional misconduct could not qualify as "material" to the Bar's investigation of Plaintiff, because the Complaint establishes that Plaintiff mishandled the subject funds (see Docket Entry 2, ¶¶ 7-18), which led to his disbarment (Consent Ord. at 1-2). Furthermore, the Affidavit of Surrender confirms that Plaintiff voluntarily surrendered his law license because he misused entrusted funds. (Aff. ¶¶ 2-5.) Therefore, Plaintiff's claim that he surrendered his law license because of Defendant's participation in the Bar's investigation lacks plausibility. See Iqbal, 556 U.S. at 680 (deeming the complaint deficient for failing to "nudge[]" its claims "across the line from conceivable to plausible" (internal quotation marks omitted)).

The Complaint next asserts that Plaintiff possessed a "substantive and procedural due process right to have the facts known to be true by the Bar to be presented thereby to the Grievance Committee." (Docket Entry 2, ¶ 15.) According to the Complaint, the deprivation of that "right" allegedly caused Plaintiff "damage" (id.), because "[t]he fact that the funds did not belong to the [C]lient was critical to the decisions made by the Plaintiff, and to the application of the law to the facts in every respect" (id. ¶ 11).

Again, these assertions fail to state a plausible claim for relief in light of the Consent Order and concessions contained in the Complaint. To begin, the Complaint lacks any factual content suggesting that the Grievance Committee would have declined to refer Plaintiff's case to the Disciplinary Hearing Commission for further proceedings if Defendant had told it that the misappropriated funds belonged to a third-party rather than the Client. (See id. ¶¶ 1-47.) Indeed, the Complaint does not even contest the appropriateness of Plaintiff's disbarment for misusing entrusted funds. (See id.) Moreover, the applicable administrative rules provide that "[d]isbarment shall be considered where the defendant is found to engage in . . . misappropriation or conversion of assets of any kind to which the defendant or recipient is not entitled, whether from a client or any other source." 27 N.C. Admin. Code 1B.0114(w)(2) (emphasis added). The Complaint's allegation that the Grievance Committee would have recommended lesser punishment than referring the matter to the Disciplinary Hearing Commission to consider disbarment, if it knew that Plaintiff misappropriated a third-party's funds rather than a client's funds, therefore fails to state a plausible claim for relief. See Iqbal, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).

-15-

In sum, the Complaint's allegations that Defendant's misrepresentations to the Grievance Committee deprived Plaintiff of his due process rights by causing him to surrender his law license, fail to state a claim for relief under Section 1983.

In regard to the individual capacity Section 1985 claim, the Complaint appears to proceed under Section 1985(3), as it offers no facts to support a claim under Section 1985(1) or (2).[5]  With respect to Section 1985(3), the Complaint must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

---

[5]  "Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties." Stankowski v. Farley, 251 F. App'x 743, 747 n.1 (3d Cir. 2007). Meanwhile, Section 1985(2) addresses acts, in state court proceedings, involving "force, intimidation, or threat" against witnesses or jurors to obstruct justice because of race or other group-related bias.  42 U.S.C. § 1985(2); see also Kush v. Rutledge, 460 U.S. 719, 725-26 (1983) (explaining that the relevant portion of Section 1985(2) "contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws," further understood as "racial, or perhaps otherwise class-based, invidiously discriminatory animus" (internal quotation marks omitted)); Stankowski, 251 F. App'x at 747 n.1 ("Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors.").  The Complaint lacks allegations regarding any such type of conduct. (See Docket Entry 2.)

-16-

<u>Thomas v. The Salvation Army S. Territory</u>, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

Here, the Complaint's only allegations to support the Section 1985 claim involve the conclusory assertions that (1) "the conduct of [Defendant] was motivated by other parties such that [Defendant] acted in collusion, in concert, and in agreement with other parties in [depriving Plaintiff of his Constitutional rights]" (Docket Entry 2, ¶ 27), (2) that "[t]he agreement was fueled by malice" (<u>id.</u>), and (3) that the "[o]vert actions by [Defendant] in connection with that agreement resulted in injury to the [P]laintiff" (<u>id.</u> ¶ 28). Importantly, the Complaint fails to allege that Defendant acted out of any racial or "specific class-based, invidiously discriminatory animus." <u>Thomas</u>, 841 F.3d at 637 (internal quotation marks omitted); <u>see also</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971) (concluding that Section 1985(3) requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). The Complaint further provides no factual content suggesting that Plaintiff could demonstrate such animus. (<u>See</u> Docket Entry 2.) Therefore, the Complaint's threadbare, conclusory assertions of a conspiracy do not plausibly assert a claim under Section 1985(3). <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice [to state a claim for relief].").

Under these circumstances, the Court should dismiss Plaintiff's individual capacity Section 1985 claim, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim.

Lastly, the Complaint requests "[t]hat the Court enter a declaratory judgment finding that the violations summarized [therein] took place." (Docket Entry 2 at 8.) Federal law provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

However, "[d]eclaratory judgments are not meant simply to proclaim that one party is liable to another." Johnson v. McCuskey, 72 F. App'x 475, 478 (7th Cir. 2003) (citing Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1553–54 (Fed. Cir. 1994) (en banc)). Rather, declaratory judgments "define the legal rights and obligations of the parties in the anticipation of some future conduct." Id. at 477 (emphasis added). In this regard,

> under the facts alleged [in a complaint], there must be a substantial continuing controversy between parties having adverse legal interests. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a

-18-

> definite, rather than speculative threat of future
> injury. The remote possibility that a future injury may
> happen is not sufficient to satisfy the "actual
> controversy" requirement for declaratory judgments.

Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) (citations

omitted). "Basically, the question in each case is whether the

facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S.

103, 108 (1969) (internal quotation marks omitted).

Here, the Complaint's allegations involve Defendant's alleged

misrepresentations to the Grievance Committee at an unspecified

time in the past (see Docket Entry 2, ¶¶ 5-22), leading to

Plaintiff's 2014 surrender of his law license (Aff. at 1 (bearing

time-stamp of "2014 JUL 22 P 12:23"); Consent Ord. at 1 (bearing

time-stamp of "2014 JUL 22 P 12:24")). The Complaint contains no

factual matter indicating that Plaintiff may suffer a future injury

from Defendant's conduct (see Docket Entry 2), much less a "real

and immediate" future injury, Emory, 756 F.2d at 1552.

"Considering that [P]laintiff's allegations do not reflect an

actual, continuing controversy with . . . [D]efendant that will

result in a future injury to [Plaintiff], [P]laintiff's claim for

declaratory relief is without legal merit and is therefore

frivolous." May v. Patterson, Civ. Action No. 12-703, 2013 WL

4776345, at *6 (S.D. Ala. Sept. 5, 2013) (citing <u>Golden</u>, 394 U.S. at 108).

## B. State-Law Claims

Given the dismissal of the Complaint's federal claims, the Complaint's remaining state-law claims should not proceed in this Court.  Federal courts "have original jurisdiction of all civil actions arising under the Constitution[ and] laws . . . of the United States."  28 U.S.C. § 1331.[6]  "[I]n any civil action of which the [federal] courts have original jurisdiction, the [federal] courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, a federal court "may decline to exercise supplemental jurisdiction over a claim" if it dismisses

_____

[6] Federal courts also maintain "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Under Section 1332(a), original "jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373 (1978) (emphasis in original).  In this case, the Complaint asserts that Plaintiff and Defendant are both citizens of North Carolina (Docket Entry 2, ¶¶ 1-2), thus precluding original jurisdiction over this action under Section 1332(a).  Moreover, the Complaint expressly invokes only federal question jurisdiction.  (<u>See</u> Docket Entry 2, ¶ 4.)

-20-

"all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Here, as discussed above, Plaintiff's federal claims (i.e. those claims arising under the Constitution and laws of the United States) warrant dismissal for frivolousness and failure to state a claim. The Court thus lacks original jurisdiction over this action under Section 1331, and may appropriately decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that, pursuant to 28 U.S.C. § 1367(c)(3), a federal court has "discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction,'" and that "[t]here are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction" (emphasis in original)). Under the circumstances of this case, the Court should decline to exercise such jurisdiction and dismiss Plaintiff's state-law claims, but without prejudice to his pursuit of such claims in an appropriate forum.

## D. Request that Proceedings Be Stayed

In his Request that Proceedings Be Stayed, Plaintiff asserts that the "present action is distinguishable" from certain "pending cases" in the Fourth Circuit and Federal Circuit, but that those "pending cases are nonetheless material to the present action regarding factual issues and for other reasons." (Docket Entry 5

-21-

at 1.)  A review of the four cited cases reveals that they involve different defendants and issues than this case.  Further, Plaintiff has not explained why the Court should stay this case pending the outcomes of those cases, or even how those outcomes could impact this case.  The undersigned Magistrate Judge will therefore deny the Request that Proceedings Be Stayed.

## CONCLUSION

In summary, the Court should dismiss Plaintiff's federal claims for frivolousness and failure to state a claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, and Plaintiff has not provided sufficient grounds for staying this action.

**IT IS THEREFORE ORDERED** that the Request that Proceedings Be Stayed (Docket Entry 5) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that Plaintiff's federal claims arising under 42 U.S.C. §§ 1983 & 1985, and his request for a declaratory judgment pursuant to 28 U.S.C. § 2201, be dismissed as frivolous and for failing to state a claim under 28 U.S.C. § 1915(e)(2).

-22-

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 10, 2017